*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MATTHEW MICHAEL VANCE,

        Defendant-Appellant.

UNPUBLISHED
March 17, 2025
1:54 PM

No. 369673
Macomb Circuit Court
LC No. 2020-001544-FC

Before: MALDONADO, P.J., and LETICA and WALLACE, JJ.

PER CURIAM.

Following a jury trial, defendant was found guilty of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (sexual penetration against victim under 13 years of age), one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact with victim under 13 years of age), and one count of indecent exposure, MCL 750.335a. On remand from this Court,[1] defendant was resentenced to serve 35 to 110 years' imprisonment for each count of CSC-I and 9 to 15 years' imprisonment for CSC-II; defendant's sentence for indecent exposure had already been served by the time of resentencing. Defendant appeals his sentence by right, and we affirm.

## I. BACKGROUND

The trial testimony was summarized as follows in the opinion released by this Court for the prior appeal:

> Defendant was convicted of sexually assaulting AA, the daughter of his ex-girlfriend, Theresa Edwards. At trial, AA testified she was four or five years old

---

[1] Defendant's convictions were affirmed in the prior appeal, but the case was remanded for resentencing because the trial court did not articulate reasons for the departure sentence. *People v Vance*, unpublished per curiam opinion of the Court of Appeals, issued April 27, 2023 (Docket No. 359173).

when defendant started touching her. AA testified that defendant vaginally penetrated her with his fingers, vaginally penetrated her with penis on two occasions, touched her vagina, told her to remove her clothes on multiple occasions, exposed himself to her, and asked her to perform sexual acts like touching his buttocks, massaging his penis, and sucking or licking his penis, most of which AA complied with because she was afraid of defendant. Defendant told AA not to tell Edwards, and AA listened because of her fear of defendant and anxiety of Edwards being upset AA did not tell her sooner. Though there were no eyewitnesses, multiple witnesses at trial corroborated AA's credibility by confirming pieces of her testimony.

Edwards testified defendant told her he did not remember doing any of the things to AA she claimed he did. However, defendant admitted he was in a dark place during that timeframe and did not always remember what he did because of drug influence. During trial, the prosecution admitted text messages between defendant and his ex-girlfriend, Megan Gray. Gray testified that, in the text messages, defendant asked to see Gray's daughters masturbate. Defendant also said he wanted to observe what a little girl having an orgasm looked like because he was curious and it turned him on. Defendant stated that he liked naked people of all ages, and that his dream was to have a house full of "naked chicks way out in the middle of nowhere." Gray responded by saying that defendant was grossing her out and making her think that kids turned him on. In response, defendant said he was kidding, and just wanted to see Gray's reaction. However, defendant followed that statement by saying he would let the girls run around the house naked and take pictures and that he wanted a nudist family. Gray admitted that, just prior to the above text messages, she had been talking to defendant on the phone about "kinky stuff." [*People v Vance*, unpublished per curiam opinion of the Court of Appeals, issued April 27, 2023 (Docket No. 359173), pp 1-2.]

At resentencing, the original sentencing judge was not available, so a substitute judge presided. Defense counsel emphasized defendant's traumatic childhood as well as his good behavior in prison. AA described the ongoing impact the crimes have had on her, describing the robbery of her childhood and ongoing relationship difficulties. The prosecution advocated for a departure from the 25-year mandatory minimum sentence, emphasizing the fact that defendant was found in possession of graphic child sexually abusive material (CSAM) on his computer at the time of his arrest. During his allocution, defendant continued to maintain his innocence, insisting that AA was putting on a "show," that the prosecution was making up a "story," and that the graphic text messages sent to his ex-girlfriend were taken out of context.

The court then gave defendant his sentence and explained its reasoning for departing from the mandatory minimum:

[I]t should also be noted [i]n [*People v Smith*, 482 Mich 292, 301; 754 NW2d 284 (2008) the Supreme Court] also stated, ["T]hat sexual abuse occurred over a long period is an objective and verifiable reason for departure.["] . . . [The previous judge] noticed the heinous nature of these crimes, . . . and the Judge noted it's in

his estimation the worst crime short of a homicide. And the big part of that is that it has lasting effects on the victim, that they're living with this trauma.

* * *

So we can, we don't have to imagine, because we heard from [AA] this morning about how this has affected her, how her childhood was stolen, how her relationships have been affected, how now her marriage is affected. How she knows, although she's getting stronger, this pain is going to be part of her for the rest of her life. And you are the cause of that pain, you alone, no one else, not your childhood, not your upbringing. You did these things. The jury convicted you.

And . . . it's beyond lack of remorse at this time. It's this, it's contempt for the Prosecutor, contempt for the Court, contempt for the victim. That's all you exhibit, that you did nothing wrong. And that goes a big part to rehabilitation.

How can this man be rehabilitated? He started assaulting this victim when she was four years of age. It continued until she was eight. There [were] other acts, evidence of him doing similar sexual crimes against other children. There [were] other acts, evidence of the Defendant collecting child pornography.

* * *

Anything, his, when you look at his criminal history, this Defendant, because the Court must consider the offense and the offender, he has a juvenile history which can also be considered by the Court, an assaultive nature. And this goes to the character of the offense, the character of the offender.

The Court finds that exceeding the guidelines was appropriate for those reasons stated, specifically what is proportionate. If the floor is 25 on a minimum, proportionate is beyond that. How much? How much time? The fact that you can't be rehabilitated is, that's like the biggest factor here. So that even if you do get out there's no indication that you can ever be rehabilitated. Although some people can for sexual offenses, the pattern that you showed here is the repeated pattern that this is what you like, this is what you enjoy, tells me that it's very unlikely that you can be rehabilitated. It's very unfortunate, but that's the reality the Court's faced with.

This appeal followed.

## II. CRUEL OR UNUSUAL PUNISHMENT

Defendant argues that his mandatory minimum sentence for CSC-I, lifetime sex-offender registration, and lifetime electronic monitoring are cruel or unusual punishments. We disagree.

"Whether a defendant's sentence constitutes cruel and/or unusual punishment under the Eighth Amendment of the United States Constitution or Article 1, § 16 of the Michigan

Constitution are questions of constitutional law that [this Court reviews] de novo." *People v Stovall*, 510 Mich 301, 312; 987 NW2d 85 (2022).

"The Eighth Amendment [to the United States Constitution] provides that excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." *Stovall*, 510 Mich at 312 (quotation marks, citation, and alteration omitted). The Michigan Constitution "provides that excessive bail shall not be required; excessive fines shall not be imposed; cruel or unusual punishment shall not be inflicted; nor shall witnesses be unreasonably detained." *Id*. at 313 (quotation marks, citation, and alteration omitted). Michigan courts have adopted "a broader interpretation of Michigan's prohibition against 'cruel *or* unusual punishment' than the [United States] Supreme Court's interpretation of the federal counterpart. *Id*. at 314 (emphasis added).

CSC-I is a tier III sex offense, MCL 28.722(v)(*iv*), and MCL 28.725(13) provides that tier III offenders must comply with SORA's registration requirements for life. MCL 750.520n provides that a person convicted of CSC-I for conduct perpetrated while 17 years of age or older against a person who was less than 13 years old must be sentenced to electronic monitoring for life. Finally, there is a mandatory 25-year minimum sentence for those aged 17 or older who perpetrate CSC-I against a victim younger than 13. MCL 750.520b(2)(b). Defendant argues that each of these requirements constitute cruel or unusual punishments and, therefore, are facially unconstitutional. "A facial challenge to a statute asserts that there is no set of circumstances under which the statute is valid." *People v Kiczenski*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364957); slip op at 3.

First, defendant argues that SORA's lifetime registration requirement for tier III offenders is facially unconstitutional. However, in *Kiczenski*, this Court held "that the 2021 SORA does not constitute punishment as applied to CSC-I offenders . . . ." *Id*. at ___; slip op at 13. It is true that the analysis in *Kiczenksi* pertained to an ex post facto argument, but when "determining whether a statute imposes a criminal punishment, which is all either clause prohibits, the standard is the same." *Id*. at ___ n 4; slip op at 7. Because defendant is a CSC-I offender, SORA is not a punishment as applied to him. If a statute can survive any as-applied challenge, then it necessarily follows that it can survive a facial challenge because prevailing on a facial challenge requires a showing "that there is no set of circumstances under which the statute is valid." *Id*. at ___; slip op at 3.

Next, defendant argues that the statute mandating lifetime electronic monitoring is facially unconstitutional as a cruel or unusual punishment.[2] Defendant acknowledges that this Court

---

[2] We note that the Supreme Court directed oral arguments in two cases for consideration of whether lifetime electronic monitoring constitutes cruel or unusual punishment. See *People v Kardasz*, 513 Mich 1118 (2024); *People v Martin*, 513 Mich 1119 (2024). We also note that the application for leave to appeal in the Supreme Court for *People v Malone*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 331903); slip op at 4, 8, in which this Court rejected facial and as-applied challenges to the 2011 SORA in the context of a juvenile offender who was tried and sentenced as an adult, was held in abeyance pending the Supreme Court's decision in *Kardasz*. See *People v Malone*, ___ Mich ___ (2024) (Docket No. 166375).

-4-

rejected the same argument when it decided *People v Hallak*, 310 Mich App 555, 577; 873 NW2d 811 (2015), rev'd in part on other grounds 499 Mich 879 (2016). However, defendant argues that the partial reversal renders *Hallak* completely nonbinding. In *Hallak*, this Court rejected the defendant's argument that the court engaged in impermissible "judicial fact-finding when scoring the [sentencing] guidelines." *Id*. at 566. Two months after *Hallak* was decided, the Michigan Supreme Court issued an opinion rendering the guidelines advisory on the basis of impermissible judicial fact-finding. See *People v Lockridge*, 498 Mich 358, 373-380; 870 NW2d 502 (2015). Accordingly, the Supreme Court partially reversed this Court's holding in *Hallak* and remanded the case to the trial court "to determine whether the court would have imposed a materially different sentence under the sentencing procedure described in" *Lockridge*. *Hallak*, 499 Mich at 879. This Court's analysis regarding lifetime electronic monitoring was left wholly undisturbed, and therefore, continues to bind us. MCR 7.215(J)(1).[3]

Finally, defendant argues that his 25-year mandatory minimum sentence is facially unconstitutional. Defendant acknowledges that the 25-year mandatory minimum sentence imposed in this case was upheld against a constitutional cruel-or-unusual attack in *People v Benton*, 294 Mich App 191, 203-207; 817 NW2d 599 (2011). Defendant argues that *Benton* is distinguishable because it involved an as-applied challenge whereas he is bringing a facial challenge. However, the existence of any unsuccessful as-applied challenge necessarily defeats any subsequent facial challenge because a facial challenge requires a showing that the statute can *never* be applied constitutionally. See *Kiczenski*, ___ Mich App at ___; slip op at 3.

In conclusion, defendant's constitutional challenges to his sentences are each without merit.

### III. PROPORTIONALITY

Defendant argues that the 10-year departure from his mandatory minimum sentence was disproportionate to the offense and offender. We disagree.

Departure sentences are reviewed for reasonableness. *Lockridge*, 498 Mich at 392. "[T]he relevant question for appellate courts reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality." *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017) (*Dixon-Bey I*) (quotation marks and citation omitted). "The trial court's fact-finding at sentencing is reviewed for clear error." *People v Lampe*, 327 Mich App 104, 125-126; 933 NW2d 314 (2019)

---

[3] Defendant also argues that lifetime electronic monitoring is unconstitutional because it is an unreasonable search. However, defendant failed to raise this issue in his statement of the questions presented; defendant's issue statement contends only that it is a cruel or unusual punishment. If an appellant fails to identify an issue in his statement of the questions presented then the appellant waives appellate review of the issue. MCR 7.212(C)(5); *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011). Regardless, this argument was likewise raised and rejected in *Hallak*, 310 Mich App at 577-581.

Defendant's guidelines range was 9 to 15 years. However, as discussed, defendant was subject to a mandatory minimum prison term of 25 years, and a mandatory minimum sentence that exceeds a defendant's guidelines range does not constitute a departure sentence. MCL 769.34. Nevertheless, a sentence that exceeds both the guidelines range and the mandatory minimum is considered a departure sentence. See *People v Payne*, 304 Mich App 667, 673; 850 NW2d 601 (2014). Accordingly, defendant's 35-year minimum sentence constitutes a 10-year departure.

As noted earlier, the relevant question when evaluating a departure sentence is whether the sentence was reasonable. *Lockridge*, 498 Mich at 392. "[A] sentence is reasonable . . . if it adheres to the principle of proportionality set forth in *Milbourn*."[4] *People v Walden*, 319 Mich App 319, 351; 901 NW2d 142 (2017), citing *People v Steanhouse*, 313 Mich App 1, 47-48; 880 NW2d 297 (2015), rev'd on other grounds 500 Mich 453 (2017). "[T]he principle of proportionality . . . requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 460; 902 NW2d 327 (2017) (quotation marks and citation omitted). "When making this determination and sentencing a defendant, a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Dixon-Bey I*, 321 Mich App at 525. This Court "must evaluate whether reasons exist to depart from the sentencing guidelines and whether the *extent* of the departure can satisfy the principle of proportionality." *People v Steanhouse (On Remand)*, 322 Mich App 233, 239; 911 NW2d 253 (2017), vacated in part on other grounds 504 Mich 969 (2019).

The issue of whether the sentence is proportionate to the offense and offender is necessarily fact-specific, but defendant has provided this Court with no discussion of the underlying facts in this case.[5] Nevertheless, the record supports the trial court's conclusion that this 10-year departure was proportionate. The court emphasized the impact that this offense had on AA, including the loss of her childhood, the impact on her relationships, and the impact on her marriage. This was supported by AA's impact statement, in which she described her constant fear and the crime's ongoing effect. The court's primary emphasis was defendant's lack of remorse, his extensive propensity for this type of offense, and the influence these factors have on his potential for rehabilitation. Lack of remorse and low potential for rehabilitation are both appropriate considerations for departure sentences. See *People v Dixon-Bey*, 340 Mich App 292, 296; 985 NW2d 904 (2022) (*Dixon-Bey II*). In addition to the years of abuse perpetrated against AA, there was evidence of text messages sent to defendant's ex-girlfriend in which he asked to see her daughters masturbate and described his desire to witness young girls orgasming. *Vance*, unpub op at 1-2. Additionally, upon being arrested, the police discovered graphic CSAM on defendant's computer. Defendant's response to all of this was to peddle nonsensical conspiracy theories,

---

[4] *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990).

[5] "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004).

accuse AA of putting on a show, accuse the prosecutor of making up the story, claim that the computer containing the child pornography was not his, and claim that the graphic text messages were somehow taken out of context. The court was justified in believing that it was highly unlikely defendant could be rehabilitated, and this belief supported the departure sentence.[6]

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Anica Letica
/s/ Randy J. Wallace

---

[6] Defendant also argues that the trial court erred by failing to justify the extent of the departure. However, defendant waived review of this issue for multiple reasons. First, defendant failed to raise the issue in his statement of the questions presented. The issue defendant raised was only whether the sentence was proportionate, and the issue statement makes no mention of the court's justification of the sentence. An appellant waives review of an issue by failing to identify it in the statement of questions presented. *Fonville*, 291 Mich App at 383. Further, aside from the conclusory statement that the court "failed to adequately explain" its sentence, defendant engages in no genuine discussion of the court's reasoning behind its sentence and why it was inadequate. Failure to brief an issue waives review of the issue. *Matuszak*, 263 Mich App at 59.